Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRE GOLOVANOV, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INNATE PHARMA S.A., MONDHER MAHJOUBI, and LAURE-HELENE MERCIER,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Plaintiff Alexandre Golovanov ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Innate Pharma S.A. ("Innate" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Innate securities between March 10, 2020 and September 8, 2020, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

1

4. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Innate securities during the Class Period and was economically damaged thereby.

7. Defendant Innate purports to be a clinical-stage biotechnology company engaged in discovering and developing first-in-class therapeutic antibodies that harness the innate immune system to improve cancer treatment and clinical outcomes for patients. The Company is incorporated in France, and their headquarters are located at 117, Avenue De Luminy-BP 30191 Marseille I0 13009

8. Defendant Mondher Mahjoubi ("Mahjoubi") served as the Company's Chief Executive Officer ("CEO") at all relevant times.

9. Defendant Laure-Helene Mercier ("Mercier") served as the Company's Chief Financial Officer ("CFO") at all relevant times.

10. Defendants Mahjoubi and Mercier are collectively referred to herein as the "Individual Defendants."

11. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

12.    Innate is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Innate under *respondeat superior* and agency principles.

14.    Defendants Innate and the Individual Defendants are collectively referred to herein as "Defendants."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

## BACKGROUND

15.    On October 23, 2018, Innate and AstraZeneca announced an expansion to a pre-existing collaboration agreement. As part of this agreement, AstraZeneca purchased 9.8% of newly-issued equity stake in Innate and, *inter alia*, obtained full oncology rights to monalizumab, a first-in-class humanized anti-NKG2A antibody. As part of this agreement, Innate was to receive $100 million in milestone payments at the start of the first Phase 3 clinical trial for monalizumab.

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading
### Statements Issued During the Class Period

16.    On March 10, 2020, the Company submitted to the SEC a Form 6-K containing a press release summarizing the results of its fiscal year ended December 31, 2019 (the "FY2019 Results"). The FY2019 Results was signed by Defendant Mercier. The FY2019 Results stated the following concerning the Company's development of Monalizumab:

- On September 26, the Company announced AstraZeneca will advance monalizumab in combination with cetuximab in head and neck patients in a Phase III trial. The trial will test monalizumab in combination with cetuximab in IO-pretreated patients suffering from recurrent or metastatic (R/M) squamous cell carcinoma of the head and neck (SCCHN). ***Innate is eligible to a $100m milestone payment from AstraZeneca upon dosing of the first patient in this first Phase III clinical trial for monalizumab.***

  *     *     *

- ***In the first half of 2020, preliminary efficacy data will be showcased from the expansion cohort 2 that included 40 additional IO-pretreated patients.***

- Additionally, ***preliminary efficacy data from the ongoing expansion cohort 3 is expected in the second half of 2020***, evaluating the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

combination of monalizumab, cetuximab and durvalumab in IO-naïve patients.

(Emphasis added.)

17.     On April 24, 2020, the Company submitted to the SEC a Form 20-F for the fiscal year ended December 31, 2019 (the "2019 20-F"). Attached to the 2019 20-F were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Mahjoubi and Mercier attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

18.     The 2019 20-F stated the following regarding monalizumab in pertinent part:

> Under our collaboration agreement with AstraZeneca, **we are eligible to receive a $100 million milestone payment upon dosing of the first patient in the first Phase III clinical trial for monalizumab.** AstraZeneca has advised us that it expects to commence the Phase III clinical trial of monalizumab in combination with cetuximab in 2020.

(Emphasis added.)

19.     On May 12, 2020, the Company submitted to the SEC a Form 6-K containing a press release summarizing the results of its first quarter ended March 31, 2020, (the "1Q2020 Results"). The 1Q2020 Results was signed by Defendant Mercier. The 1Q2020 Results continued to paint a rosy picture about the development of monalizumab:

- **At the ASCO20 Virtual Scientific Conference, new efficacy data will be presented from a Phase II expansion cohort of IO-pretreated patients.**
- **The advancement of monalizumab in combination with cetuximab to a Phase III trial in IO-pretreated patients suffering from recurrent or metastatic (R/M) squamous cell carcinoma of the head and neck (SCCHN) is expected in 2020.**

(Emphasis added.)

5

20.     According to the 1Q2020 Results, monalizumab trials were on track, and results were significant enough to share at a scientific conference. Notably, the 1Q2020 Results did not discuss, in any capacity, the standing agreement between Innate and AstraZeneca, particularly as it relates to the $100 million payment due upon dosing of the first patient in the first Phase 3 trial.

21.     The statements contained in ¶16-20 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Innate touted the results of their various Phase 2 trials as being within expectations; (2) Innate continued to reassure investors that they were eligible for the $100 million payment upon first dosing of Phase 3 trials; (3) Innate failed to timely disclose their renegotiations with AstraZeneca to split the $100 million payment into two $50 million payments, to be partially contingent on performance during the Phase 3 trials; and (4) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH EMERGES

22.     On September 8, 2020, the Company submitted to the SEC a Form 6-K containing a press release summarizing the results of the first half of 2020, ended June 30, 2020 (the "1H2020 Results"). The 1H2020 Results was signed by Defendant Mercier. In the 1H2020, Defendants abruptly announced a change in the long-touted payment scheme with AstraZeneca.

23.     In pertinent part, the 1H2020 Results stated the following regarding monalizumab development:

6

- At the May ASCO20 Virtual Scientific Conference, efficacy data was presented from a Phase 2 expansion cohort investigating the combination of monalizumab and cetuximab in patients with recurrent or metastatic head and neck squamous cell cancer (R/M SCCHN) who have been previously treated with platinum-based chemotherapy and PD-(L)1 inhibitors ("IO-pretreated", "Cohort 2"). ***Those data showed an overall response rate in line with previously reported data and a manageable safety profile.***
- As previously announced, the advancement of monalizumab into a Phase 3 randomized clinical trial evaluating monalizumab in combination with cetuximab in patients suffering from R/M SCCHN is expected in the second half of 2020.
- ***Following review of longer patient follow-up and maturing survival data from Cohort 2, and following discussions with AstraZeneca, the Company has agreed to amend the agreement. It will now receive a $50 million payment upon AstraZeneca's dosing of the first patient in the Phase 3 trial, and a $50 million payment after the interim analysis demonstrates the combination meets a pre-defined threshold of clinical activity.***

(Emphasis added.)

24.     The same day, before markets opened, Innate held a conference call to discuss the 1H2020 Results. During the conference call, Defendant Mahjoubi stated the following, in pertinent part, regarding monalizumab:

"Moving to monalizumab and in the beginning a few updates from our Phase II program. In May of this year, as part of the ASCO 2020 Virtual Scientific Program, we presented efficacy data from the Expansion Cohort 2 of our Phase II trial investigating the combination of monalizumab and cetuximab in IO-pretreated patients with recurrent or metastatic head and neck cancer.

***Those data showed an overall response rate in line with previously reported data and a very manageable safety profile.*** In addition, we expanded Cohort number 3 of this study exploring the triplet of monalizumab, cetuximab and durvalumab in IO-naive patients with head and neck cancer from 40 to 20 patients. We have completed enrollment for this cohort and expect to publish related data in 2021. This is the update on the Phase II program.

7

*Now, the great news that we shared this morning and we are very excited that AstraZeneca will be advancing monalizumab into Phase III* wheelchair [Phonetic], as we previously announced. Similar to Cohort 2, AZ study will be evaluated with monalizumab and cetuximab in IO-pretreated patients with recurrent or metastatic head and neck cancer. *Importantly, the advancement of monalizumab into Phase III represents a significant clinical and financial milestone for Innate as with the dosing of the first patient in the Phase III we will be progressed in Innate first ever Phase III assets.*

*You may recall Innate was eligible to receive $100 million from AstraZeneca upon dosing of the first patient in the Phase III trial. And following the review of the maturation of the data and discussion with AstraZeneca, the company has agreed to amend the agreement and it will now receive a $50 million payment up in AstraZeneca dosing of the first patient in the Phase III and a $50 million payment after the interim analysis demonstrates that the combination meets the pre-defined threshold of clinical activity.*

All other potential development and commercial milestones related to the agreement remains unchanged, including our participation to the financing of the Phase III under the terms we all know. Together with AstraZeneca, we are very excited by the opportunity for monalizumab and believe the novel combination of pair [Phonetic] in mona, an anti-NKG2A monoclonal antibody, with cetuximab has the potential to provide the new therapeutic option for patients who fail immunotherapy."

(Emphasis added.)

25.    On this news, Innate's American Depositary Share ("ADS") prices dropped $1.62, or over 26.6%, from closing at $6.07 on September 4, 2020, the previous trading day, to open at $4.82 on September 8, 2020 and declined throughout the trading day to close at $4.45.

26.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

8

27.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Innate securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Innate, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

28.   The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Innate securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands, of members in the proposed Class.

29.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

30.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

31.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

9

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business Innate;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Innate to issue false and misleading SEC filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings;

- whether the prices of Innate securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

32.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

33.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Innate securities met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient and automated market;

- As a public issuer, Innate filed periodic public reports with the SEC and NASDAQ;
- Innate regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and
- Innate was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

34.     Based on the foregoing, the market for Innate securities promptly digested current information regarding Innate from all publicly available sources and reflected such information in the prices of the securities, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

35.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

36.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

11

37.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

38.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

39.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Innate securities during the Class Period.

40.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Innate were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Innate, their control over, and/or receipt and/or modification of Innate's allegedly

materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Innate, participated in the fraudulent scheme alleged herein.

41.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Innate personnel to members of the investing public, including Plaintiff and the Class.

42.    As a result of the foregoing, the market price of Innate securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Innate securities during the Class Period in purchasing Innate securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

43.    Had Plaintiff and the other members of the Class been aware that the market price of Innate securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Innate securities at the artificially inflated prices that they did, or at all.

44.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

45.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the

13

plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Innate securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

46.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47.     During the Class Period, the Individual Defendants participated in the operation and management of Innate, and conducted and participated, directly and indirectly, in the conduct of Innate's business affairs. Because of their senior positions, they knew the adverse non-public information about Innate's misstatement of revenue and profit and false financial statements.

48.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Innate's financial condition and results of operations, and to correct promptly any public statements issued by Innate which had become materially false or misleading.

49.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Innate disseminated in the marketplace during the Class Period concerning Innate's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Innate to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Innate within the meaning of Section 20(a) of the Exchange Act. In this capacity, they

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

participated in the unlawful conduct alleged which artificially inflated the market price of Innate securities.

50.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Innate.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)     awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: October 23, 2020                **THE ROSEN LAW FIRM, P.A.**
                                       By: /s/Laurence M. Rosen
                                       Laurence M. Rosen (SBN 219683)
                                       355 South Grand Avenue, Suite 2450
                                       Los Angeles, CA 90071
                                       Telephone: (213) 785-2610
                                       Facsimile: (213) 226-4684
                                       Email: lrosen@rosenlegal.com

1

*Counsel for Plaintiff*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS